OPINION
 

 RYAN, Circuit Judge.
 

 Terrance J. Meyers obtained a bankruptcy discharge in 1993. Thereafter, the Internal Revenue Service attempted to collect back taxes from Meyers for the taxable years 1980-1983. Believing that this tax obligation was discharged in his bankruptcy proceeding, Meyers asked the bankruptcy court to declare that the tax liability was discharged and to forbid the IRS from further collection efforts. The IRS objected, claiming that the tax debt was excepted from discharge pursuant to 11 U.S.C. § 523(a)(1)(C) because Meyers attempted to “willfully” evade tax liability. The bankruptcy court granted summary judgment in favor of the IRS, and the Bankruptcy Appellate Panel for the Sixth Circuit affirmed. This appeal followed.
 

 I.
 

 To understand the bankruptcy court’s judgment, we must go back to the taxable years in question, 1980-1983, more than 10 years before Meyers filed for bankruptcy relief. Meyers did not file any tax returns for those years. In addition, during those years, he claimed exemptions in excess of those to which he was entitled on W-4 forms he gave to his employer. As a result, only about 5% of Meyers’s tax liability was withheld. Meyers’s tax liability for these years, had the taxes been timely paid, would have exceeded $36,000. According to Meyers, he then believed that only those individuals who volunteered to pay taxes had to file returns.
 

 In 1985, Meyers had an apparent change of heart and met with an IRS representative regarding the delinquent taxes. He completed IRS Forms 4549 and 870, indicating the total amount of taxes and penal
 
 *624
 
 ties owed. Meyers began making partial payments to the IRS for the back taxes, but after paying about $1,500, he stopped.
 

 In 1993, two years after his last payment, Meyers filed for bankruptcy relief. At that time, his annual income was about $43,000. He listed his tax debt ($150,000) on his schedule of liabilities. The court issued a judgment of discharge on June 28, 1993.
 

 After that, the IRS attempted to collect the tax debt. In 1994, Meyers asked the bankruptcy court to prevent the IRS from continuing its collection efforts, arguing that these efforts violated the discharge injunction. The IRS moved for summary judgment, arguing that the taxes were nondischargeable, pursuant,
 
 inter alia,
 
 to section 523(a)(1)(C) of the Bankruptcy Code. 11 U.S.C. § 523(a)(1)(C). The bankruptcy court granted the IRS’s motion, finding that Meyers willfully attempted to evade the taxes. Meyers claimed his conduct was not willful, because he voluntarily cooperated with the IRS in an attempt to correct his past mistakes. The bankruptcy court was unpersuaded that Meyers’s subsequent repentant conduct vitiated the willfulness of his refusal to file tax returns and pay the taxes owed for 1980-1983. The court concluded that section 523(a)(1)(C) did not allow a debtor to undo a willful attempt to evade a tax after such an evasion occurred.
 

 Meyers appealed to the Bankruptcy Appellate Panel for the Sixth Circuit. The BAP found that Meyers’s conduct went beyond the mere nonpayment of taxes because he failed to file returns and claimed excessive exemptions on his W-4 forms. The BAP affirmed the judgment of the bankruptcy court, finding that Meyers voluntarily, consciously, and intentionally evaded ax liability. It is from this decision that Meyers now appeals.
 

 II.
 

 This court reviews a grant of summary judgment
 
 de novo. See Rowley v. United States,
 
 76 F.3d 796, 799 (6th Cir.1996). Summary judgment is proper “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” Fed. R.Civ.P. 56(c). Moreover, we construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party.
 
 See White v. Turfway Park Racing Ass’n,
 
 909 F.2d 941, 943-44 (6th Cir.1990). We will affirm a grant of summary judgment when “the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the nonmoving party.”
 
 Cox v. Kentucky Dep’t of Transp.,
 
 53 F.3d 146, 150 (6th Cir.1995).
 

 III.
 

 The Bankruptcy Code excepts from discharge any debt
 

 (1) for a tax or a customs duty—
 

 [[Image here]]
 

 (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax[.]
 

 II U.S.C. § 523(a)(1)(C). The creditor, here the government, bears the burden of proving by a preponderance of the evidence that a debt is excepted from discharge under section 523(a) of the Bankruptcy Code.
 
 See Grogan v. Garner,
 
 498 U.S. 279, 290-91, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). As a general matter, exceptions to discharge are narrowly construed to promote the central purpose of the discharge: relief for the “ ‘honest but unfortunate debtor.’ ”
 
 See id.
 
 at 286-87, III S.Ct. 654 (citation omitted).
 

 Nondischargeability is reserved for debtors who deliberately evade tax liability, rather than those who make inadvertent mistakes.
 
 See In re Birkenstock,
 
 87 F.3d 947, 952 (7th Cir.1996). This court addressed the section 523(a)(1)(C) excep
 
 *625
 
 tion from discharge in
 
 Toti v. United States (In re Toti),
 
 24 F.3d 806 (6th Cir.1994), and concluded that “ Voluntary, conscious, and intentional’ ” acts are willful.
 
 Id.
 
 at 808. Additionally, this court noted that the discharge exception includes acts of omission as well as acts of commission.
 
 See id.
 
 at 809.
 

 In his brief on appeal, Meyers advances one argument to support his contention that his failure to file returns and pay taxes was not willful. He claims that because he voluntarily went to the IRS and admitted liability and made some payments, his conduct could not have been willful. Meyers cites cases from other circuits to support his contention that subsequent conduct negates the willfulness of his failure to file returns. However, an examination of these cases indicates that they do not stand for the proposition for which Meyers cites them. The Eleventh Circuit held that failure to pay taxes, without more, does not except those taxes from discharge under section 523(a)(1)(C).
 
 See Haas v. IRS (In re Haas),
 
 48 F.3d 1153, 1158 (11th Cir.1995). In that case, the debtor accurately filed all of his tax returns, but did not pay the taxes.
 
 See id.
 
 at 1154. The court concluded that because the debtor did not try to avoid the tax liability, the debt was discharged.
 
 See id.
 
 at 1161.
 
 Haas
 
 is distinguishable from this case: Meyers did not file any tax returns for the years at issue, and claimed exemptions to which he was not entitled on his employer’s W-4 forms. Meyers did more than fail to pay.
 

 Meyers also cites
 
 In re Birkenstock,
 
 87 F.3d 947, for the proposition that this court must consider his later conduct in determining whether his failure to file the returns constituted a willful attempt to evade tax liability. In
 
 Birkenstock,
 
 the Seventh Circuit considered, over the debtors’ objections, that the debtors failed to file tax returns in years other than those directly at issue in the case. The court concluded that this evidence was relevant to show that the failure to file for the years in question was not due to a mistake, but was part of a continuous pattern of deliberate evasion.
 
 See id.
 
 at 951. In other words, the subsequent conduct was relevant to the debtors’ states of mind at the time they failed to file the returns at issue. Meyers’s subsequent repentant conduct, however, does not tell us anything that would be favorable to him about his state of mind during the years in which he failed to file tax returns.
 

 The Supreme Court addressed the issue of purging tax fraud by filing a later, amended return in
 
 Badaracco v. Commissioner,
 
 464 U.S. 386, 104 S.Ct. 756, 78 L.Ed.2d 549 (1984).
 
 Badaracco
 
 involved the IRS’s attempt to assess a penalty for a fraudulent return even though the taxpayer had already filed an amended return correcting the fraud. The Court allowed the IRS to assess the penalty and stated:
 

 It is established that a taxpayer who submits a fraudulent return does not purge the fraud by subsequent voluntary disclosure; the fraud was committed, and the offense completed, when the original return was prepared and filed. Any other result would make sport of the so-called fraud penalty. A taxpayer who had filed a fraudulent return would merely take his chances that the fraud would not be investigated or discovered, and then, if an investigation were made, would simply pay the tax which he owed anyhow and thereby nullify the fraud penalty. In short, once a fraudulent return has been filed, the case remains one of a false or fraudulent return, regardless of the taxpayer’s later revised conduct, for purposes of criminal prosecution and civil fraud liability under § 6653(b) [of the Internal Revenue Code].
 

 Id.
 
 at 394,104 S.Ct. 756 (internal quotation marks and citations omitted).
 

 We are unpersuaded by Meyers’s claim that the wilfulness of his earlier evasion of taxes was somehow nullified by later coming clean with the IRS.
 

 
 *626
 
 Although not raised in his brief, Meyers claimed at oral argument that his failure to file was due to ignorance, and that whether his mistaken belief negated any willfulness was a factual question that should have precluded summary judgment. He claims that the bankruptcy court improperly decided the issue as a matter of law. Meyers now realizes that he should have filed tax returns, but claims that at the time he honestly believed that only volunteers were required to file returns and pay taxes.
 

 The government counters this argument by pointing out that Meyers claimed excessive exemptions to minimize his withholding. This, the government posits, indicates that Meyers knew he had to pay taxes, and knew that if the money were withheld from his wages he would be unable to get it back. According to the government, if Meyers really believed that the tax laws did not apply to him, he would have claimed an appropriate amount of exemptions and requested a refund. This, of course, is an argument that is addressed to Meyers’s credibility, and, according to Meyers, is a jury submissible question of fact.
 

 In
 
 Cheek v. United States,
 
 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), the Supreme Court addressed the definition of “willfully” as that word is used in sections 7201 and 7203 of title 26 of the United States Code, which criminalize willful attempts to evade taxes and willful failures to file tax returns.
 
 See id.
 
 at 193-94, 111 S.Ct. 604. The taxpayer in
 
 Cheek
 
 did not file returns or pay taxes because he believed that the tax system was unconstitutional, that he was not a taxpayer as defined by the Internal Revenue Code, and that his wages were not income as defined by the Code. Cheek claimed that he held these beliefs in good faith and therefore his failure to pay his taxes could not have been willful. Cheek was convicted after a jury trial, and the issue before the Supreme Court on appeal was the propriety of the jury instructions given at the trial.
 

 First, the Supreme Court observed that due to the complexity of the tax code, tax crimes are often an exception to the general rule that ignorance of the law is not a defense.
 
 See id.
 
 at 199-200, 111 S.Ct. 604. The Court concluded that willfulness is defined as the “ ‘voluntary, intentional violation of a known legal duty.’ ”
 
 Id.
 
 at 201, 111 S.Ct. 604 (citation omitted).
 

 Willfulness, as construed by our prior decisions in criminal tax cases, requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty.... In the end, the issue is whether, based on all the evidence, the Government has proved that the defendant was aware of the duty at issue, which cannot be true if the jury credits a good-faith misunderstanding and belief submission, whether or not the claimed belief or misunderstanding is objectively reasonable.
 

 [[Image here]]
 

 ... Of course, the more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury, will consider them to be nothing more than simple disagreements with known legal duties imposed by the tax laws and will find that the Government has carried its burden of proving knowledge.
 

 Id.
 
 at 201-04, 111 S.Ct. 604. In the end, the Court ruled that in determining willfulness it was proper for the district court to instruct the jury to disregard Cheek’s views about the constitutionality of the tax code, but that the jury should be permitted to consider Cheek’s belief that he was not a taxpayer and that his wages were not income.
 
 See id.
 
 at 206-07, 111 S.Ct. 604.
 

 This case is distinguishable from
 
 Cheek
 
 on two grounds. First, this is not a criminal prosecution. Second,
 
 Cheek
 
 addressed jury instructions, but the issue in this case is whether the district court erred in granting summary judgment. In any event, even in light of the
 
 Cheek
 
 decision,
 
 *627
 
 the bankruptcy court was within its authority in granting summary judgment if it was properly able to conclude that no reasonable juror could find that Meyers honestly believed that he need not file tax returns. We agree with the bankruptcy court and the bankruptcy appellate panel in this case. No reasonable juror in America in the 1990s, considering all the evidence in this case, could have concluded that Meyers honestly believed that the tax code applied only to individuals who volunteered to pay.
 

 IV.
 

 We AFFIRM the grant of summary judgment in favor of the IRS.