*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 11a0125p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

BENEFICIAL MORTGAGE CORPORATION;
STATE OF OHIO, Department of Taxation;
CITY OF TOLEDO, Division of Taxation,
  *Defendants-Appellees,*

  *v.*

ANYSE J. STOREY,
  *Defendant-Appellant.*

> No. 09-3848

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 07-00905—Jack Zouhary, District Judge.

Decided and Filed: May 16, 2011

Before: GRIFFIN and WHITE, Circuit Judges; MURPHY, District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** Mark R. McBride, Toledo, Ohio, for Appellant. John Schumann, Thomas J. Clark, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., Washington, D.C., Suzana Kukovec-Krasnicki, KEITH D. WEINER & ASSOCIATES CO., LPA, Cleveland, Ohio, for Appellees.

  MURPHY, D. J., delivered the opinion of the court, in which GRIFFIN, J., joined. WHITE, J. (pp. 13–15) delivered a separate opinion concurring in part and dissenting in part.

_____

[*] The Honorable Stephen J. Murphy, III, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

———————————

**OPINION**

———————————

STEPHEN J. MURPHY, III, District Judge.  For ten years of a twelve-year period, Anyse Storey filed federal income tax returns that showed she owed taxes — but she failed to pay them.  The United States brought an action to reduce to judgment Storey's tax liabilities for the ten years, and to foreclose on its tax liens placed on real property owned by Storey.  Storey argued that her Chapter 7 bankruptcy petition discharged her tax liabilities for some of the years preceding the filing.  The district court disagreed and entered judgment in favor of the United States, finding that Storey had willfully attempted to evade paying taxes for those years, preventing discharge of the obligations through her bankruptcy filing.  Because the United States cannot carry its burden on the issue of willfulness, we **REVERSE.**

**I.**

During all times relevant to the present appeal, Storey was a practicing physician residing in Maumee, Ohio.  For ten years out of a twelve-year span, she filed federal income tax returns that showed she owed federal income taxes, but she did not pay any of the taxes due.  Specifically, Storey filed tax returns showing taxable income in 1994, 1995, 1996, 1997, 2000, 2001, 2002, 2003, 2004 and 2005, but has never paid any federal income tax for those years.

On March 15, 2002, Storey filed a Chapter 7 bankruptcy petition in the Northern District of Ohio.  Neither Storey nor the United States filed an adversary complaint seeking a determination regarding the dischargeability of her federal income tax liabilities.  In July 2002, the bankruptcy court entered an order of discharge pursuant to 11 U.S.C. § 727, and the bankruptcy case was closed on September 10, 2004.

Two and a half years later, on March 28, 2007, the United States brought the present action seeking to reduce to judgment Storey's federal income tax liabilities for the years 1994 through 1997 and 2000 through 2005, and to foreclose on its tax liens on

real property acquired by Storey in 1994, referred to herein as "the Morningdew Property." The United States sued Storey and joined as defendants various other parties that might claim an interest in the Morningdew Property, a number of whom defaulted by not appearing in the action. Storey argued that her tax obligations for the years 1994, 1995, 1996, and 1997 were discharged in her bankruptcy proceedings.

The district judge held a telephonic status conference on November 5, 2007, at which all parties not in default were present. Following the conference, the district judge issued an order in which he ruled that Northern District of Ohio General Order No. 84 did not grant jurisdiction to the bankruptcy court on the dischargeability of debts in Storey's 2002 bankruptcy. The order also set a deadline of November 16, 2007 for Storey "to file a brief with respect to the applicability of the discharge exception under Section 523," and directed the United States to respond by December 14, 2007, with no replies permitted. R. 26.

Storey filed a brief identifying four issues she believed to be relevant to the proceedings: 1) whether the district court had jurisdiction over the action as it pertains to the bankruptcy discharge and its effect on the United States' ability to obtain a personal judgment against Storey; 2) whether the income tax obligations owing at the time Storey filed her bankruptcy petition were discharged in the bankruptcy; 3) whether Storey had an obligation to file a complaint in the bankruptcy action to determine dischargeability of income tax obligations; and 4) whether the United States had violated the injunction in effect by virtue of the discharge in bankruptcy. Storey argued that her taxes for the years 1994 through 1997 were discharged by her 2002 bankruptcy under 11 U.S.C. § 507(a)(8) because she timely filed tax returns, the obligation was more than three years old, and the Internal Revenue Service had not issued a notice of assessment within 240 days immediately preceding the filing of the bankruptcy petition. In response, the United States argued that the dischargeability of Storey's tax debts is governed not by 11 U.S.C. § 507(a)(8), but rather by 11 U.S.C. § 523(a)(1)(C), which provides that a discharge under § 727 is not allowed for a tax liability with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade

or defeat the tax. The United States argued, without elaboration, that its position in the litigation was that Storey's tax liabilities for those years were not dischargeable based upon her willful attempt to evade or defeat her taxes.

After the government filed its brief, Storey sought leave to supplement her previously filed memorandum in support of discharge and for an enlargement of time. She argued that the district court should be afforded an opportunity to hear all arguments regarding whether the tax liabilities were discharged or are now dischargeable and what the appropriate forum should be for determining these issues. The district court denied Storey's motion in a marginal entry order and set the case for a telephonic status conference.

Following the off-the-record status conference, the district court issued an order ruling on the four points raised by Storey in her memorandum. On the question of whether Storey's income tax obligations were discharged in her 2002 bankruptcy, the district court held that 11 U.S.C. § 523(a)(1)(C) exempts tax liabilities from bankruptcy discharge when a debtor "willfully attempts in any manner to evade or defeat such tax," that Storey's pattern of failing to pay income tax over a number of years was evidence of a willful attempt to defeat the tax, and that the taxes therefore were not discharged in her bankruptcy proceeding. R. 35. The district court concluded that the case could proceed as to all tax years set forth in the complaint. On February 27, 2008, the district court entered a partial judgment in favor of the United States against Storey for unpaid federal tax liabilities for tax years 1994, 1995, 1996, 1997, 2000, 2001, 2002, 2003, 2004 and 2005 in the amount of $319,698.76.

Storey timely appealed the district court's final judgment.

## II.

Storey challenges the district court's conclusion that her federal income tax obligations for the years 1994 through 1997 were not discharged in her 2002 bankruptcy proceedings. We agree with her position and reverse.[1]

## A.

We address first the proper standard of review. The district court ruled in a summary fashion, but did not specify the procedural mechanism it used to do so. The order is titled "Order," and mentions no rule of procedure. There were no factual findings. The court simply stated that "Defendant's tax obligations were exempted under § 523(a)(1)(C) and were not discharged in her bankruptcy proceeding," after concluding that Storey's "pattern of failing to pay income tax over a number of years is evidence of a willful attempt to defeat the tax." R. 35. The parties agree that the district court's decision resembles that of an entry of summary judgment sua sponte. This is a fair characterization of the decision given that there was no trial or findings of fact. Moreover, the parties agree that the material facts are undisputed and that whether Storey's tax obligations were discharged is a legal question.

We agree that the proper way to view the district court's decision is as a sua sponte entry of summary judgment. Accordingly, we will review the district court's decision de novo. *See Schreiber v. Moe*, 596 F.3d 323, 329 (6th Cir. 2010). "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (citation and internal quotation marks omitted). Summary judgment must be entered against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case,

---

[1]Storey also challenges the district court's decision to resolve the dischargeability issue in a summary fashion without giving her notice of its intent to do so, as well as its decision not to refer the issue of dischargeability to the U.S. Bankruptcy Court of the Northern District of Ohio. Because we reverse on matters of substance, we do not reach the procedural challenges.

and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

**B.**

A debtor filing a petition for bankruptcy under Chapter 7 of the Bankruptcy Code generally is granted discharge from all debts (including tax debts) that arose before the filing of the petition. 11 U.S.C. § 727(b); *see Stamper v. United States (In re Gardner)*, 360 F.3d 551, 557 (6th Cir. 2004). Exceptions to the general rule do exist, however, and they are to be strictly construed in favor of the debtor. *United States v. Hindenlang (In re Hindenlang)*, 164 F.3d 1029, 1034 (6th Cir. 1999). Relevant here:

> (a) a discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> > (1) for a tax or customs duty—
> >
> > . . .
> >
> > > (C) with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax
> > >
> > > . . . .

11 U.S.C. § 523(a)(1)(C). This exception "serves to limit the Bankruptcy Code's discharge of tax debts to the honest but unfortunate debtor." *Stamper*, 360 F.3d at 557 (citing *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991)). The government has the burden of demonstrating by a preponderance of the evidence that the debtor willfully attempted to evade the tax liability. *Id.*

The analysis under § 523(a)(1)(C) has two components: a conduct requirement and a mental state requirement. *Id.* at 558. To satisfy the conduct requirement, the government must demonstrate that the debtor avoided or evaded payment or collection of taxes through acts of omission, such as failure to file returns and failure to pay taxes, or through acts of commission, such as affirmative acts of evasion. *Id.* at 557. Non-payment of tax alone is not sufficient to bar discharge of a tax obligation, but it is a relevant consideration in the overall analysis. *Myers v. IRS (In re Myers)*, 216 B.R. 402,

405 (6th Cir. BAP 1998), *aff'd sub nom. Meyers v. IRS (In re Meyers)*, 196 F.3d 622 (6th Cir. 1999); *see also In re Birkenstock*, 87 F.3d 947, 951 (7th Cir. 1996) (noting that "mere nonpayment, without more, evidences not dishonesty but the defining characteristic of all debtors — honest and dishonest, alike — insufficient resources to honor all of one's obligations" (citation, internal quotation marks, and alterations omitted)).

Here, non-payment of Storey's tax obligations is the only evidence relevant to the conduct requirement. Storey filed federal tax returns for the years in question, and there is no dispute that she did so timely and accurately. She simply failed to pay the taxes she owed. This is not enough by itself to render her tax debt nondischargeable. Unless her non-payment was "knowing and deliberate," the tax obligations were discharged in her bankruptcy. *See Stamper*, 360 F.3d at 557 (noting that "a 'knowing and deliberate' nonpayment provides the basis for determining that the tax debt is non-dischargeable"); *but see Haas v. IRS (In re Haas)*, 48 F.3d 1153, 1158 (11th Cir. 1995) (holding that mere non-payment is not sufficient to satisfy the conduct element of § 523(a)(1)(C), and thereby the government's burden, without regard to debtor's mental state), *overruled in part by Griffith v. United States (In re Griffith)*, 206 F.3d 1389, 1396 (11th Cir. 2000) (en banc); *see also United States v. Fretz (In re Fretz)*, 244 F.3d 1323, 1328-29 (11th Cir. 2001).[2] Accordingly, we turn now to the mental state requirement.

---

[2]We recognize that our statement in *Stamper* regarding a knowing and deliberate non-payment is potentially dictum given that the debtor's conduct in that case went beyond mere non-payment to include the use of nominee bank accounts to conceal from the IRS large deposits of income. 360 F.3d at 559. Absent our statement in *Stamper*, we are left only with our holding in *Toti v. United States (In re Toti)*, 24 F.3d 806, 809 (6th Cir. 1994), that a failure to pay taxes *coupled with a failure to file tax returns* can support a finding of non-discharge under § 523(a)(1)(C). *See also Birkenstock*, 87 F.3d at 951-52. We have never squarely addressed in a published decision whether "voluntary, conscious, and intentional" non-payment (absent also a failure to file tax returns) is enough to prevent discharge of a tax obligation under § 523(a)(1)(C). The Eleventh Circuit has, however, and concluded that willful non-payment is not enough. *See Haas*, 48 F.3d at 1155, 1158. We have addressed *Haas* in the past, but instead of agreeing or disagreeing with its holding, we distinguished it on its facts. *See Meyers*, 196 F.3d at 625 ("*Haas* is distinguishable from this case: Meyers did not file any tax returns for the years at issue, and claimed exemptions to which he was not entitled on his employer's W-4 forms. Meyers did more than fail to pay."). Rather than trying to determine whether our statement in *Stamper* was dictum, we assume here that it is not, because doing so does not change the end result in the case: since the United States has not carried its burden to show willfulness, *see infra*, Storey's tax obligations were discharged in her bankruptcy even assuming her non-payment satisfied the conduct requirement. We find this approach preferable to creating dictum on the issue of whether non-payment by itself can satisfy § 523(a)(1)(C)'s conduct requirement.

Non-dischargeability under 523(a)(1)(C) requires a "voluntary, conscious, and intentional evasion." *Stamper*, 360 F.3d at 557.  The government must prove that the debtor 1) had a duty to pay taxes, 2) knew she had a duty, and 3) voluntarily and intentionally violated that duty. *Id.* at 558.  Storey concedes that she had a known duty to pay taxes, but argues that there is no evidence that she voluntarily and intentionally violated that duty.  Thus, only the third element of the willfulness requirement is at issue here.

There is little evidence to support a finding that Storey voluntarily and intentionally violated her known duty to pay taxes.  The only argument made to the district court on this issue was in response to the court's request for briefing, where the United States asserted: "[t]he United States maintains that Storey's tax liabilities are nondischargeable based upon her willful attempt to evade or defeat her taxes."  United States Resp. Br. 5 (R. 32).  The United States alleged no facts to support its position, despite being yoked with the burden of proof on this issue.  On appeal, the United States adds that Storey's purchase of the Morningdew Property in 1994 — the very year she stopped paying taxes — demonstrates a voluntary and intentional choice to evade her tax obligations.  Not so.  There is no indication that the property is more lavish than Storey's previous residence or that the home was an unnecessary expense, purchased as an alternative to paying future tax obligations.  Nor is there any evidence that when Storey purchased the home, she was even aware she would later become unable to pay her taxes.  If the purchase were made in the years *after* Storey stopped paying taxes, there might be reason to suspect an intent to evade her tax obligations. *See, e.g.*, *United States v. Mitchell (In re Mitchell)*, 633 F.3d 1319, 1328 (11th Cir. 2011).  But the home was purchased at the *beginning* of (and perhaps *before* — we cannot be sure) Storey's financial difficulties.  Without facts or evidence — materials the United States had the burden of producing — there is only speculation.  "Mere speculation is insufficient to create a preponderance of the evidence." *United States v. Burke*, 252 F. App'x 49, 54 (6th Cir. 2007).

We note also that there is no evidence that Storey lived lavishly during the years she did not pay her taxes, or that she chose to engage in recreational or philanthropic activities instead of paying her taxes. *See, e.g.*, *Mitchell*, 633 F.3d at 1329 ("[W]illful intent is further shown by Mitchell's discretionary spending, which included purchasing vacation timeshares, purchasing stock, repaying a $30,000 personal loan, and donating approximately $81,000 to his church."); *Stamper*, 360 F.3d at 560-61 (finding willfulness where debtor engaged in twenty golfing and vacation trips over span of nearly three years, expending substantial sums, instead of paying taxes); *Volpe v. IRS (In re Volpe)*, 377 B.R. 579, 589 (Bankr. N.D. Ohio 2007) (finding willfulness where debtor spent his money on vacations and private schooling for children instead of paying taxes, noting that "when the debtor used his disposable income for leisure activities, knowing that he had a significant tax liability, the debtor made a voluntary decision to spend the money on himself rather than to pay his taxes"; "[t]he debtor's decision to spend his money on vacations and private school tuition weighs in favor of a finding that he willfully evaded his tax liability").

The United States relies heavily on the decision of the bankruptcy court denying Storey's request for a discharge of her student loan obligations. The published decision was not expressly considered by the district court. The bankruptcy court set forth the following facts as undisputed:

> The Debtor, who is presently 50 years of age, is a licensed physician. The Debtor has practiced medicine for the past 15 years, and presently specializes in the field of urology. At some time in the not too distant future, the Debtor will become "board certified" in this specialty. At the present time, the Debtor practices solo, employing three part-time staff.

*Storey v. Nat'l Enter. Sys. (In re Storey)*, 312 B.R. 867, 870 (Bankr. N.D. Ohio 2004). The bankruptcy court further found that "the Debtor's present annual income is in the $50,000.00 range. In the past, however, the Debtor earned as high as $96,000.00 per year." *Id.* at 873. It found that Storey had recently declined to take a job that paid $110,000 per year, and Storey stated that she could work longer hours if needed. *Id.* at 872-73. The court also noted that Storey's husband lived with her but did not contribute

significantly to the household expenses, choosing instead to maintain a separate residence for his own family members, where the members resided rent-free. *Id.* at 874. The bankruptcy court found that Storey was capable of earning at least double her then-current salary, but simply chose not to. *Id.* Finding that Storey had options available that would permit her to pay her student loan obligations, and that her present inability to pay her obligations would later subside, the court concluded that she had failed to meet her burden of demonstrating an "undue hardship" by a preponderance of the evidence. *Id.*

We think it inappropriate to consider the bankruptcy court's decision here. The treatment of student loans in bankruptcy is distinctive, and differs significantly from the treatment of tax obligations. For one, there is a presumption that student loan debts are non-dischargeable and therefore the burden of establishing a discharge of student loans is on the debtor, by a preponderance of the evidence. *Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett)*, 487 F.3d 353, 358-59 (6th Cir. 2007). On the other hand, in the case of pre-petition tax debts, the presumption is that such debts *are* dischargeable, and therefore the government bears the burden of establishing otherwise by a preponderance of the evidence. *Stamper*, 360 F.3d at 557. Additionally, in determining whether student loan debts are dischargeable, a court must determine whether repayment of the loans would cause undue hardship, which is forward-looking. *See Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 437 (6th Cir. 1998) (discussing the widely-accepted three-part test for undue hardship). On the other hand, the question of whether the failure to pay taxes was willful looks backwards in time to the conduct and state of mind of the debtor at the time he or she failed to pay the taxes. Storey's failure to carry her burden to show an undue hardship in the student loan context cannot create a windfall to the United States by establishing willful evasion as a matter of law.

But even indulging the United States' request that we consider the facts contained in the bankruptcy court's decision does not change the result here. While it was undisputed that Storey's income was in the $50,000 range and that she had in the past made as much as $96,000 per year, no evidence was offered regarding why or when

her pay decreased. Storey declined the offer for a job paying $110,000 per year, but did so because the job required relocation, to her son's detriment. Furthermore, no reason was provided for why Storey's husband did not contribute to the household. None of these undisputed facts contributes to a finding of willful evasion by a preponderance of the evidence. The bankruptcy court also concluded that Storey had options that would enable her to repay her student loans. Civil Rule 52(a)(6) does not require that we defer to this ultimate conclusion of fact since it is not the bankruptcy court's decision under review here. Regardless, the ultimate finding demonstrates only that as of July 29, 2004 (the date the decision issued) Storey would soon have the ability to repay her student loans. It does not touch upon what is relevant here: whether Storey voluntarily and intentionally avoided paying her taxes.

Thus, we conclude that the district court should not have effectively granted summary judgment to the United States on the dischargeability issue. The United States failed to offer sufficient evidence to rebut the presumption that the tax obligations were discharged in Storey's bankruptcy proceedings, or that she is anything other than "the honest but unfortunate debtor." *Grogan*, 498 U.S. at 286-87 (citation and internal quotation marks omitted). Moreover, we see no reason to remand so the United States can offer additional evidence. For one, the United States has not requested a remand as an alternative to affirming. More importantly, by arguing on appeal that the district court provided both parties "a fair opportunity to present their positions on this critical legal issue," United States Br. 24-25, the United States is foreclosed from arguing that the district court did not give the United States ample opportunity to meet its burden under § 523(a)(1)(C). *See White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 476 (6th Cir. 2010) ("The doctrine of judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." (citation and internal quotation marks omitted)). We are permitted to presume that the United States can present no additional facts or evidence to support its position. A remand for discovery and a trial would therefore serve no purpose.

**III.**

Evidence did not support the district court's entry of partial judgment against Storey on the issue of willful evasion of her federal income tax obligations for years 1994 through 1997. The record does not support a finding that Storey willfully attempted to evade or defeat her federal income taxes for these years. The presumption that the obligations were discharged in bankruptcy thus remains unrebutted. Accordingly, partial judgment must be entered in favor of Storey with respect to her tax obligations for years 1994 through 1997. We **REVERSE** and **REMAND** to the district court for proceedings consistent with this opinion.

_____

**CONCURRING IN PART AND DISSENTING IN PART**
_____

HELENE N. WHITE, Circuit Judge  (concurring in part and dissenting in part). To render Storey's tax debt nondischargeable, the government must prove by a preponderance of the evidence that she attempted a "voluntary, conscious, and intentional evasion" of her responsibility to pay taxes. *Stamper v. United States (In re Gardner)*, 360 F.3d 551, 557 (6th Cir. 2004) (citing *Toti v. United States (In re Toti)*, 24 F.3d 806, 809 (6th Cir. 1994)); 11 U.S.C. § 523(a)(1)(C).  I agree with the majority that the government has not established that it is entitled to summary judgment on this issue, and therefore concur in the reversal of the district court's judgment.  I do not, however, agree that the government failed to meet its burden of showing that there is a genuine issue of material fact whether Storey willfully attempted to evade payment of the taxes. I would remand to allow the parties to present factual evidence and arguments.

As the majority observes, "[n]onpayment alone is insufficient to bar discharge of a tax obligation . . . ." *Stamper*, 360 F.3d at 557; *see also Myers v. IRS (In re Myers)*, 216 B.R. 402, 405 (6th Cir. BAP 1998), *aff'd sub nom. Meyers v. IRS (In re Meyers)*, 196 F.3d 622 (6th Cir. 1999); *In re Birkenstock*, 87 F.3d 947, 951 (7th Cir. 1996).  To render the tax debts nondischargeable, the government must make the additional showing that Storey had the requisite mental state: that she "voluntarily, consciously, and knowingly evaded payment." *Stamper*, 360 F.3d at 558.  There was little evidence or argument on this element in the proceedings below.  The majority concludes that Storey's buying the Morningdew Property and the findings of the bankruptcy court in the student-loan-discharge matter are insufficient to raise a genuine issue of material fact regarding the mental-state element of § 523's tax-debt-discharge provision.  I agree that the findings of the bankruptcy court in the student-debt-discharge decision are not preclusive here, but the same facts are enough to raise a genuine issue of fact as to Storey's intent in not paying her taxes. *See Storey v. Nat'l Enter. Sys. (In re Storey)*, 312 B.R. 867, 870 (Bankr. N.D. Ohio 2004).  Similarly, the purchase of the Morningdew

property is relevant evidence on the question of Storey's mental state, notwithstanding the timing of the purchase.

Cases construing § 523(a)(1)(C) look to all the circumstances surrounding the debtor's nonpayment of taxes to assess whether that nonpayment was voluntary, conscious, and intentional.   Relevant considerations include whether the debtor attempted to conceal income and assets from the IRS,  *Stamper*, 360 F.3d at 558 (debtor placed income and assets in the names of others); *Griffith v. United States (In re Griffith)*, 206 F.3d 1389, 1396 (11th Cir. 2000) (en banc) (debtor fraudulently conveyed property to wife); *Birkenstock*, 87 F.3d at 952-53 (debtors "attempted to attribute their personal income to their family trust"), whether the debtor spent excessively on nonessential expenses instead of paying taxes, *Stamper*, 360 F.3d at 558, 560 ("[T]he debtor lived lavishly during the period of time the IRS sought to collect the tax liability . . . . [including] twenty golfing and vacation trips upon which appellant lavished substantial sums."); *United States v. Mitchell (In re Mitchell)*, 633 F.3d 1319, 1329 (11th Cir. 2011) ("[W]illful intent is further shown by Mitchell's discretionary spending, which included purchasing vacation timeshares, purchasing stock, repaying a $30,000 personal loan, and donating approximately $81,000 to his church."), whether the debtor had the ability to pay taxes, *Stamper*, 360 F.3d at 558; *Toti*, 24 F.3d at 809, and whether the debtor had the sophistication and wherewithal to understand her tax responsibilities, *United States v. Fretz (In re Fretz)*, 244 F.3d 1323, 1331 (11th Cir. 2001) ("Put bluntly, someone who can control his drinking enough to perform medical procedures during twelve- to twenty-four hour shifts in an emergency room over a period of years can control his drinking enough to file tax returns and pay taxes during that same period. Instead of doing that, as Dr. Fretz himself put it, he 'just totally ignored' his tax responsibilities.").

Because neither party established an entitlement to summary judgment, and the parties did not submit the case to the court for judgment on the facts, I would remand for further proceedings.   The government should be permitted to present evidence of how much Storey earned and what she did with her earnings, as well as other evidence

relevant to her mental state. Storey, in turn, should be permitted to put on evidence that she failed to pay her taxes only because she could not afford to. I would reverse the district court's order finding that Storey's tax obligations were not discharged by the bankruptcy proceeding and would remand for additional proceedings on issues relevant to Storey's mental state.